**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE CAROLINA**

| | |
|---|---|
| **MARÍA LABOY FEBO**<br><br>**Parte Demandante**<br><br>**v.**<br><br>**ARCOS DORADOS PUERTO RICO, LLC, FULANOS DE TAL 1-100**<br><br>**Parte Demandada** | **CASO NÚM.: CA2021CV00877** 403<br><br>**SOBRE: DAÑOS; PETICIÓN DE ORDEN** |

**EMPLAZAMIENTO**

ESTADOS UNIDOS DE AMERICA, SS
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

A: **ARCOS DORADOS PUERTO RICO, LLC**
MONTEHIEDRA OFFICE CENTER, 9615 LOS ROMEROS AVE., STE. 504 SAN JUAN, PR

POR LA PRESENTE se le emplaza para que presente al tribunal su alegación responsiva dentro de los **30** días de haber sido diligenciado este emplazamiento, excluyéndose el día del diligenciamiento. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del tribunal. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, si el tribunal, en el ejercicio de su sana discreción, lo entiende procedente.

Nombre del Abogado: JOSÉ CARLOS VÉLEZ COLÓN (RUA: 18913)
Dirección: 421 AVE MUNOZ RIVERA, APT #1009, SAN JUAN, PUERTO RICO, 00918-4015
Tel: 7875999003
Correo Electrónico: JVELEZ@VELEZLAWGROUP.COM

Expedido bajo mi firma y sello del Tribunal, el ______ de APR 13 2021 de ______.

Lcda. Marilyn Aponte Rodríguez
Secretaria Regional
Nombre del (de la) Secretario(a) Regional

Angélica M. Romero Chaparro
Por: Secretaria Auxiliar del Tribunal
Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal

F01

**PRUEBA DEL DILIGENCIAMIENTO**

**NUM.: DE CASO:** CASO NÚM.: **CA2021CV00877**
Maria Laboy Febo v. Arcos Dorados Puerto Rico LLC, y otros

Yo, Faustino Betancourt declaro tener capacidad legal conforme a la Regla 4.3 de las Reglas de Procedimiento Civil de Puerto Rico, y certifico bajo mi firma y juramento que el diligenciamiento del **EMPLAZAMIENTO** y **PETICION** (en adelante, **"DEMANDA"**) en el caso de referencia fue realizado por mí persona de la manera en que se indica más abajo:

1. **FECHA** y hora del diligenciamiento: 11:36 A.M. Abril/29/2021

2. **LUGAR o DIRECCIÓN** de la entrega del Emplazamiento y copia de la Demanda de manera conjunta: Monte Hiedra Office Center Piso 5 off. 504

3. **MODO O FORMA DE ENTREGA** Entregué copia del Emplazamiento y copia de la Demanda de manera conjunta y personalmente a la persona indicada abajo, quien aseguró estar autorizado a recibir emplazamientos a nombre de la persona que consta al dorso conforme a la Regla 4.4 de las Reglas de Procedimiento Civil de Puerto Rico.

4. **EL NOMBRE DE LA PERSONA AUTORIZADA QUE RECIBIÓ EL EMPLAZAMIENTO Y DEMANDA ES:**

Angeileen Gonzalez

5. **FIRMA DEL DILIGENCIANTE:** [signature]

*****************************************************************************

**DECLARACION DEL DILIGENCIANTE**
**(ANTE LA SECRETARIA DEL TRIBUNAL)**

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información arriba provista en el diligenciamiento del emplazamiento es verdadera y correcta.

**Y PARA QUE ASÍ CONSTE**, suscribo la presente en ____________________, Puerto Rico,

hoy día ______ de__________________ del año **2021**.

________________________________
**FIRMA DEL EMPLAZADOR**

Jurado y suscrito ante mi por ____________________________________ de las circunstancias personales arriba mencionadas, a quien por no conocer personalmente, doy fe de haber identificado mediante la siguiente identificación personal:

____________________________________________________________

En _______________, Puerto Rico hoy _____ de __________ de 2021.

________________________________
**FUNCIONARIO AUTORIZADO**

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE CAROLINA**

| | |
|---|---|
| **MARÍA LABOY FEBO**<br><br>**Parte Demandante**<br><br>**v.**<br><br>**ARCOS DORADOS PUERTO RICO, LLC, FULANOS DE TAL 1-100**<br><br>**Parte Demandada** | **SOBRE: DAÑOS; PETICIÓN DE ORDEN** |

**DEMANDA**

**AL HONORABLE TRIBUNAL:**

Comparece la Parte Demandante, María Laboy Febo (en adelante, nos referimos como "Parte Demandante"), a través de la representación legal que suscribe, y solicita daños y un interdicto permanente debido al incumplimiento de ARCOS DORADOS PUERTO RICO, LLC d/b/a McDonalds y FULANOS DE TAL 1-100 (en adelante, nos referidos a estos de manera conjunta como "Parte Demandada") con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq y la reglamentación que implementa el estatuto 28 C.F.R. § 36.302(c). (En adelante nos referimos al estatuto federal y su reglamentación como "Ley ADA"), así como otros remedios al amparo de la Sección 504 del Rehabilitación Act, 29 U.S.C. § 794 por razón de discriminar en contra de una persona con impedimentos que estaba acompañada de un animal de servicio.

**EL LUGAR DONDE OCURRIÓ Y OCURRE EL DISCRIMEN**

**1.** El discrimen ocurre y ocurrió en el restaurante McDonald's ubicado en el centro comercial Carolina Shopping Court en la Avenida 65 de Infantería, en el

municipio de Carolina, Puerto Rico PR 00985 (Coordenadas: 18.38142573376297, -65.96345771219522) (Parcela: 088-076-208-20) (en adelante, nos referiremos a este lugar como "la Propiedad" o "McDonald's de Carolina" o "el lugar de acomodo").

## NECESIDAD DE LA ACCIÓN

2. Esta Demanda es necesaria por lo siguiente:

a) La Parte Demandada no tiene una política para evitar el discrimen en contra de las personas que utilizan animales de servicio;

b) La Parte Demandada mantiene políticas y protocolos que son inconsistentes con la reglamentación del Departamento de Justicia de los Estados Unidos.

c) La Parte Demandante se (i) encuentra en inminente riesgo de enfrentar el discrimen o (ii) sería fútil regresar a la Propiedad en este momento ya que constituiría un riesgo a la seguridad personal de la Parte Demandante o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria;

d) La Parte Demandante tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en la Propiedad una vez el discrimen sea eliminado su totalidad. Sin embargo, la Parte Demandante se reserva el derecho de regresar a la Propiedad en cualquier momento antes de que se elimine el discrimen, aunque ello represente someterse a condiciones humillantes o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen o cualquier otro fin bona fide.

## LA PARTE DEMANDANTE

3. La Parte Demandante es la señora María Laboy Febo. En cumplimiento con la norma procesal aplicable, se informa que su dirección física y postal es: Urb,

Country OH 13 Calle 518 Carolina, PR 00982. Su número de teléfono es: 787-308-8350. Su número de fax es: no tiene.

## LA PARTE DEMANDADA

4. La Parte Demandada está integrada por las siguientes personas naturales o jurídicas:

i. ARCOS DORADOS PUERTO RICO LLC., una persona jurídica que es titular, arrendadora, arrendataria u operadora de la Propiedad que se identifica en el primer párrafo de esta alegación.

ii. FULANOS DE TAL 1-100. Estas personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores de la Propiedad que se identifica en el primer párrafo de esta alegación. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la Petición a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Peticionaria" incluye también a todos los peticionados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

5. De este procedimiento civil ser removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4).

6. El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo de las leyes federales o estatales.

7. Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la Propiedad en controversia está ubicada en esta región judicial y porque los hechos ocurrieron en esta región judicial.

## ALEGACIONES GENERALES Y RELACIONADAS A LOS PROCEDIMIENTOS, POLÍTICAS Y PRÁCTICAS DE LA PARTE DEMANDADA

8. La Parte Demandante es una persona protegida por la Ley ADA, pues padece y/o tiene expediente médico en torno a las siguientes condiciones: desorden de ansiedad severa; desorden de pánico. Dichas condiciones afectan su sistema neurológico, su cerebro y su actividad del diario vivir de pensar y mantenerse de pie durante mareos asociados a episodios de pánico.

9. La Parte Demandante utiliza un animal de servicio entrenado para hacer tareas directamente relacionadas a las condiciones mencionadas en el párrafo anterior. El animal de servicio, que detecta los ataques de pánico de la Parte Demandante, se acerca y le distrae para ayudarle a salir más rápido del ataque de pánico. El cual le brinda un indispensable apoyo emocional y es un animal de servicio terapéutico.

10. El 27 de enero de 2021, la Parte Demandante acudió al centro comercial: Carolina Shopping Court, ubicado en Carolina. Una vez allí, entró al McDonald's que está en el Carolina Shopping Court.

11. La Parte Demandante solicita hablar directamente con el gerente para hablar sobre el letrero que se ilustra inmediatamente abajo.



12. La Parte Demandante preguntó al Gerente si conoce la reglamentación aplicable acerca de la Ley ADA y los Animales de servicio, a lo que este responde que desconoce la reglamentación, pero que conoce que en McDonald's únicamente están permitidos los perros guías para personas con condición de ceguera. En ese momento, le pregunté al Gerente McDonalds realizaba algún entrenamiento o capacitación sobre el alcance de "Animal de servicios" a lo que respondió que "no".

13. En los restaurantes McDonalds en Puerto Rico, se coloca un letrero como el que está ilustrado arriba. Ese letrero indica que en Mcdonalds sólo se permiten perros "guía". La Parte Demandante se vio afectada en sus derechos no debido a un incidente aislado, según se describe más adelante, sino cómo resultado de una política y práctica discriminatoria que es de su faz impermisible. De igual manera, la Parte Demandante se ha visto afectada no sólo por la implementación de una política discriminatoria de su faz, sino también por la política de no dar entrenamiento adecuado y razonable al personal de McDonalds.

14. Ese 27 de enero de 2021, la Parte Demandante explicó que tenía un animal de servicio, que *no* andaba con ella ese día, de raza "American Bulldog mix" que tiene un peso de unas 70 libras que es un animal de servicio, concepto que tiene una amplia gama de cobertura, y que no se limita únicamente a los perros guías para ciego, sino también incluye animales que brinden servicios psiquiátricos y otros animales de servicio relacionado a una discapacidad. Como resultado de este evento, la Parte Demandante tuvo conocimiento de estas políticas y prácticas discriminatorias de McDonald's en Puerto Rico.

15. A pesar de su conocimiento sobre cual es la política de McDonald's, la Parte Demandante estaba decidida no someterse a vivir en discrimen y negándose la oportunidad de entrar al McDonald's y consumir los alimentos en el establecimiento como lo puede hacer cualquier otra persona que no dependa de un animal de servicio. Por ello, la Parte Demandante regresó McDonald al cabo de una semana

aproximadamente. En esta ocasión, la Parte Demandante fue acompañada de su animal de servicio, un American Bulldog mix. Al entrar al restaurante, fue cuestionada por el personal de McDonalds, quien informó que no se permitían animales. Se le informó a la Parte Demandante que solamente se permitan perros guías para no videntes, lo que forzó a la Parte Demandante a dar incomodas explicaciones en público (frente a otras personas que observaban de manera insiste y hacían comentarios) sobre lo que es un animal de servicio y haciendo hincapié en que no todos los animales de servicio son perros guías para ciegos. Los empleados mostraron no tener ningún conocimiento o entrenamiento sobre las normas aplicables a animales de servicio en los restaurantes. Los empleados finalmente permitieron la entrada al McDonalds luego de estos no supieran contestar lo planteado por la Parte Demandante. A pesar de que la Parte Demandante fue detenida, interrogada y cuestionada por un personal sin entrenamiento y conocimiento, la comunicación de parte de la Parte Demandante fue siempre sosegada, cordial y respetuosa en todo momento. El hecho de que se haya permitido (o tolerado) la entrada al final de estos eventos, y se haya tenido acceso a los bienes y servicios, la experiencia no fue igualitaria porque el cuestionamiento fue impermisible e *interfirió* con el libre e igualitario acceso y disfrute del restaurante. Se alega que la interferencia impermisible con los derechos de la Parte Demandante constituyó un daño legal concreto causado por la Parte Demandada y que puede ser remediado por el tribunal, si se ordena a la Parte Demandada a modificar sus políticas sobre los animales de servicio y procedimientos para entrenar a los empleados sobre los requerimientos de ley.

16. Como resultado del evento descrito anteriormente, la Parte Demandante optó por sentarse junto a su animal de servicio en una mesa distante, en una esquina lejana, ya que se sentía humillada y no se sintió bienvenida por ella estar junto a su animal de servicio. Aunque la Parte Demandante tenía y tiene derecho a sentarse en

cualquier mesa disponible al público, fue la interacción poco profesional, humillante y discriminatoria lo que dobló la psiquis de la Parte Demandante, provocando que ella se aislara para no sentir que incomodaba a otros mientras disfrutaba de su comida.

17. De igual manera, con posterioridad a ese incidente, y el día de hoy, la Parte Demandante se ha visto desalentada de visitar el restaurante porque tiene conocimiento de que existe una política discriminatoria que resulta en que no pueda regresar y entrar al restaurante con su animal de servicio.

18. Durante los próximos días luego segundo incidente (que tuvo lugar aproximadamente una semana después del 27 de enero de 2021) la Parte Demandante sufrió angustias mentales por razón de ataques de pánico y ansiedad al recordar el incidente. La Parte Demandada sabía o debía saber que podría recibir en su restaurante personas que, como la Parte Demandante, utilizan un animal de servicio psiquiátrico, y que estas personas tienden a reaccionar de manera más adversa cuando son sometidas a situaciones estresantes y humillantes. Como resultado del incidente, la Parte Demandante se sintió por semanas inusualmente sobrecargada, depresiva, con un vivo sentido de coraje e impotencia, a pesar del consumo de medicamentos. Durante varias semanas, la Parte Demandante no pudo funcionar a capacidad completa.

19. La Parte Demandante, en conjunto con su abogado, ha determinado que la Parte Demandada discriminó en contra de una persona con discapacidad en un edificio privado en violación a la Ley ADA.

20. A base de la experiencia de otras personas, la Parte Demandante, en conjunto con su abogado, ha determinado que la Parte Demandada mantiene un patrón de discrimen generalizado.

21. La Parte Demandante se propone establecer, y por tanto alega afirmativamente, que históricamente ha habido, y hay al presente, un discrimen

institucional en McDonald's Carolina (nombre comercial del demandado). Este discrimen es contra todas las personas que utilizan animales de servicio, según se relata en esta Demanda.

**PRIMERA CAUSA DE ACCIÓN:
AMERICANS WITH DISABILTIES ACT**

22. La Reglamentación del Departamento de Justicia de los Estados Unidos que implementa el Titulo II de la Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. dispone lo siguiente:

> "Generally, a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a).[1]

23. La Reglamentación del Departamento de Justicia de los Estados Unidos que implementa el Titulo III de la Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. dispone lo siguiente:

> Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability. 28 CFR § 36.302(c)[2]

24. La reglamentación del Departamento de Justicia de los Estados Unidos, División de Derechos Civiles, fue ampliamente pensada y discutida previo a su promulgación para lograr el objetivo de la ADA, que es la eliminación de todas las formas de discrimen en contra de las personas con discapacidades. 42 U.S.C. § 12101(a)(7). Es por ello que, como se menciona en el párrafo anterior, el objetivo general de la reglamentación es permitir que las personas con impedimento sean acompañadas por animales de servicio como regla general 28 C.F.R. § 35.136(a).

25. La reglamentación aplicable establece, entre otras cosas: la naturaleza de las consultas permitidas que puede hacer sobre el uso de un animal de servicio por parte

[1] La reglamentación aplicable puede accederse a través del siguiente enlace: https://www.law.cornell.edu/cfr/text/28/36.302

de un individuo el requisito de que a las personas con discapacidades se les permita estar acompañadas por sus animales de servicio" en todas las áreas de las instalaciones donde haya miembros del público, participantes en servicios, programas o actividades, o invitados, se le permite ir y la prohibición general de exigir que las personas que utilizan animales de servicio paguen una tarifa o cumplan con requisitos que en general no se aplicas a personas sin mascotas. La reglamentación, presenta la visión integral de la agencia sobre cómo las entidades públicas o lugares de acomodo público deben abordar la variedad de problemas que pueden surgir en el contexto de los animales de servicio.

26. Sin embargo, la agencia también considera en qué circunstancias no sería razonable exigir a las entidades que permitan el uso de animales de servicio. En consecuencia, el reglamento enumera excepciones específicas a la regla general. Estas excepciones, establecidas en 28 C.F.R. §§ 35.104, 35.130 (b) (7), 35.136 (b) y 35.139 y 28 CFR § 36.302(c)(2) establecen que si bien permitir que las personas con discapacidades usen sus animales de servicio generalmente es razonable (es decir, razonable en la mayoría de los casos), existen ciertas circunstancias cuando exigir a las entidades que permitan su uso no sería razonable. Primero, el requisito general se aplica sólo a los perros que están "entrenados individualmente para trabajar o realizar tareas en beneficio de una persona con una discapacidad". 28 C.F.R. § 35.104; 28 CFR § 36.104 (definición de "animal de servicio"). Además, una entidad no necesita permitir que un individuo use su animal de servicio si alteraría fundamentalmente la naturaleza del servicio, programa o actividad de la entidad, o si representaría una amenaza directa para la salud o seguridad de otros. Id. §§ 35.130 (b) (7), 35.139; ver 28 C.F.R. pt. 35, Apéndice A § 35.104 a la pág. 600; Id. § 35.136 a la pág. 608 (1 de julio de 2014); 28 CFR § 36.302(a). Y un animal de servicio puede ser debidamente excluido si "está fuera de control y el cuidador del animal no toma medidas efectivas para controlarlo", o si el animal no está entrenado para hacer

sus necesidades fuera del edificio o un lugar especialmente designado. 28 C.F.R. § 35.136 (b); 28 CFR § 36.302(c)(4). Por casi 30 años, el Departamento de Justicia ha interpretado los requisitos de la ADA de esta manera con amplio apoyo judicial. Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1189 (11th Cir. 2007) (nueva política de permitir animales de servicio no hace académico el reclamo); Alejandro v. Palm Beach State Coll., 843 F. Supp. 2d 1263, 1269-71 (S.D. Fla. 2011); Crowder v. Kitagawa, 81 F.3d 1480, 1484 (9th Cir. 1996); Newberger v. Louisiana Dep't of Wildlife & Fisheries, No. 11-2996, 2012 WL 3579843, at 4 n.6 (E.D. La. Aug. 17, 2012); Pena v. Bexar Cnty., Texas, 726 F. Supp. 2d 675, 685 (W.D. Tex. 2010); Rose v. Springfield-Greene Cnty. Health Dep't, 668 F. Supp. 2d 1206, 1214 n.9 (W.D. Mo. 2009).

27. De manera uniforme y sistemática, la Parte Demandada incumple su deber de permitir los animales de servicio de manera consistente con la ADA y la reglamentación aplicable.

28. De manera uniforme y sistemática, la Parte Demandada deja de hacer modificaciones razonables en sus políticas, prácticas y procedimientos para permitir los animales de servicio de una manera consistente con la reglamentación aplicable.

29. De manera uniforme y sistemática, la Parte Demandada incumple su deber de hacer los arreglos y capacitaciones para asegurar que sus empleados estén entrenados sobre las políticas, prácticas y procedimientos relacionados a las personas que utilizan animales de servicio.

30. De manera uniforme y sistemática, la Parte Demandada ha incumplido su deber de establecer protocolos y proporcionar capacitación para garantizar que el personal sepa cómo proceder cuando se solicita una modificación razonable a las políticas, prácticas o procedimientos para permitir la entrada de un animal de servicio.

31. De manera uniforme y sistemática, la Parte Demandada no tiene rótulos,

carteles u otro tipo de avisos en sus centros de servicio al conductor para advertir a las personas con impedimento sobre su derecho a tener un animal de servicio. Tampoco su sitio web contienen información sobre las políticas sobre animales de servicio.

32. De manera uniforme y sistemática, la Parte Demandada incumple su deber de tener procedimientos de evacuación del establecimiento en caso de emergencia que incluya medidas específicas para garantizar la seguridad de visitantes que utilizan animales de servicio.

33. De manera uniforme y sistemática, la Parte Demandada incumple sus obligaciones con las personas que utilizan animales de servicio, a pesar de que permitir los animales de servicio de manera consistente con la reglamentación federal no alteraría fundamentalmente la naturaleza de los bienes o servicios ofrecidos.

34. De manera uniforme y sistemática, la Parte Demandada no tiene a una persona designada para establecer políticas, implementar y supervisar el cumplimiento con las obligaciones legales relacionadas a los animales de servicio en dicho lugar.

35. La experiencia de la Parte Demandante del 27 de enero de 2021 no constituyó un evento aislado. Lo que vivió la Parte Demandante es una experiencia sustancialmente representativa de las vicisitudes que viven las personas con impedimentos que utilizan perros de servicios, que no necesariamente tengan perros guías (como en el caso de las personas con condiciones de ceguera) que procuran servicios en como resultado de las políticas, prácticas y procedimientos de la Parte Demandada.

36. Las políticas, prácticas y procedimientos de la Parte Demandada han sido sistemáticos y continuos por muchos años. La Parte Demandada nunca en su existencia ha tenido un nivel de total cumplimiento con sus obligaciones legales con respecto a los animales de servicio.

37. El 27 de enero de 2021, la Parte Demandante fue víctima de unas políticas, prácticas y procedimientos uniformes que afectaron y afectan a la Parte Demandante y a la comunidad de personas que dependen de un animal de servicio.

38. Las prácticas y procedimientos de la Parte Demandada existentes al momento en que la Parte Demandante visitó el McDonald's de Carolina y al presente, representan un elevadísimo nivel de incumplimiento de las obligaciones legales de la Parte Demandada.

39. La Parte Demandada mantiene una política ponderada y concienzuda de ignorar sus obligaciones legales frente a la comunidad de personas con impedimento que dependen de animales de servicio. A modo de ejemplo, la Parte Demandada ha decidido no establecer protocolos para cumplir con los derechos de las personas con impedimento que dependen de un animal de servicio, ni ha capacitado al personal ni ha querido invertir tiempo o dinero en cumplir sus obligaciones estatutarias; y ha desalentado activamente el ejercicio de derechos, como el derecho a contar con el apoyo de un animal de servicio.

40. Las políticas, prácticas y procedimientos existentes en esta propiedad están motivadas por el menosprecio a las personas con impedimento que dependen de un animal de servicio, que no necesariamente necesitan perros guías, sino como en este caso, animal de servicio que brinde servicios psiquiátricos.

41. Además, con independencia de lo anterior, la conducta intencional específica del 27 de enero de 2021 fue el resultado de un ánimo discriminatorio, que ha causado daños emocionales a la Parte Demandante.

**SEGUNDA CAUSA DE ACCIÓN**
**REHABILITATION ACT DE 1973**
(Sección 504, 29 U.S.C. § 701 et seq.)

42. La Sección 504 dispone: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

43. La Parte Demandante es una persona protegida por la Sección 504 ya que está sustancialmente limitada en su capacidad de pensar o mantenerse de pie durante episodios de mareos.

44. La Parte Demandante es una persona elegible para recibir los beneficios y servicios que se hacen disponibles al público en la Propiedad.

45. La conducta de la Parte Demandada descrita en esta Demanda violó los derechos de la Parte Demandante bajo la Rehabilitation Act al excluir a la Parte Demandante o negarle beneficios solamente por razón de su discapacidad.

46. La conducta de la Parte Demandada mostró indiferencia deliberada hacia los derechos de la Parte Demandante porque la Parte Demandada sabía que se solicitaban acceso para la Parte Demandante y su animal de servicio, pero su solicitud fue ignorada de manera ponderada.

47. La Parte Demandada ha recibido fondos federales al amparo del The Coronavirus Aid, Relief, and Economic Security Act (CARES Act).

48. El CARES Act autoriza a la Small Business Administration (SBA) a proveer asistencia económica temporera a organizaciones elegibles. Específicamente, la Sección 1102 del CARES Act estableció el programa conocido como Paycheck Protection Program (PPP), que amplió la autoridad de SBA para garantizar prestamos bajo la sección 7(a) del Small Business Act. La Sección 1110 del CARES Act amplió a su vez la autoridad de SBA para distribuir préstamos conocidos como Injury Disaster Loans (EIDL) bajo la Sección 7(b) (2) del Small Business Act. En resumen, esto significa que se pueden tomar un préstamo que luego no se tiene que repagar.

49. Por supuesto, el recibo directo de fondos federales supone unas obligaciones para los beneficiarios. Por ejemplos, múltiples leyes de derechos civiles imponen

obligaciones a las personas que reciben fondos federales. Entre ellas, el Titulo VI de la Ley de Derechos Civiles de 1964 y, en lo aquí relevante, la Sección 504 del Rehabilitation Act, que prohíbe el discrimen por razón de discapacidad. De igual manera, la reglamentación de la SBA también le prohíbe a entidades que reciben fondos federales discriminar a base de ciertas categorías protegidas, incluyendo "handicap" o impedimento. 13 C.F.R. Sección 112 que implementa el título VI; 13 C.F.R. Sección 117, que implementa la Age Discrimination Act; of 13 C.F.R. Sección 113, Subparte A. Por mandato reglamentario, las entidades que reciben fondos federales tiene una obligación de mantener records y producir reportes de cumplimiento con estos requisitos cuando ello sea solicitado; deben también permitir el acceso a estos records y a las facilidades. Las personas también pueden hacer querellas con la SBA, y si la investigación refleja incumplimiento con los requerimientos aplicables, la SBA puede suspender los beneficios, acelerar el repago de la deuda o requerir la devolución de los fondos federales.

50. Al momento de la visita de la Parte Demandante, y al presente, la Parte Demandada tenía una obligación contractual de cumplir con las disposiciones de la Rehabilitation Act y legislación antidiscrimen que protege a la Parte Demandante.

51. Durante el pasado año, y al presente, la Parte Demandada y la Propiedad recibió fondos federales como parte de sus programas y actividades. Estos fondos federales, entre otros, a base de los fondos del CARES Act y el PPP antes discutidos. Se cree, y será objeto de descubrimiento de prueba, que también se han recibido fondos federales de otras fuentes y programas federales.

52. La conducta de la Parte Demandada demuestra una indiferencia deliberada hacia los derechos de la Parte Demandante porque la Parte Demandada sabía o debía saber de la existencia de la Rehabilitation Act de 1974 y la Americans with Disabilities Act de 1990, mas dejó de procurar el cumplimiento con sus obligaciones por años. No fue hasta que se presentó una reclamación civil que la parte contraria

procuro moverse en una dirección de mayor grado de cumplimiento con sus obligaciones. La dejadez histórica de la parte demandada ha sido intencional y motivada por un ánimo discriminatorio, indiferencia y cultura de deshumanización de la comunidad de personas con impedimentos.

53. La Parte Demandante sufrió angustia emocional y daños debido a la violación de la Rehabilitation Act por parte de la Parte Demandada.

54. De conformidad con la Sección 505 de la Rehabilitation Act, la Parte Demandante tienen derecho a una compensación por sus daños, costas, gastos de litigio y honorarios de abogado.

**REMEDIOS LEGALES SOLICITADOS**

**POR TODO LO CUAL**, la Parte Demandante muy respetuosamente solicita los siguientes remedios legales al Honorable Tribunal:

A. Que se acepte jurisdicción sobre este asunto y que se declare que la Parte Demandada violó la Ley ADA de 1990.

B. Que se acepte jurisdicción sobre este asunto y que se declare que la Parte Demandada violó la Rehabilitation Act de 1973.

C. Un interdicto permanente de conformidad con 42 U.S.C. §§ 12131-12134 y 28 C.F.R. Parte 35; 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Demandada a que tome todos los pasos necesarios que el tribunal considere apropiados para proteger los derechos estatutarios de la Parte Demandante. Específicamente, se solicita una orden de interdicto permanente para que la Parte Demandada sea obligada a adoptar, implementar y monitorear una política con respecto a los animales de servicio:

   a. Que reconozca que los animales de servicio están entrenados individualmente para trabajar o realizar tareas para personas con discapacidades;

   b. Que reconozca que los animales de servicio no siempre son perros;

otros animales pueden ayudar a las personas con discapacidad;

c. Que reconozca que los animales de servicio vienen en todas las razas y tamaños, pueden ser entrenados por una organización o por una persona con una discapacidad, y no necesitan estar certificados o autorizados por alguna autoridad estatal o privada;

d. Que reconozca que los animales de servicio no siempre tienen un chaleco, una rótulo o un símbolo que indique que son animales de servicio;

e. Que reconozca que un animal de servicio no es una mascota.

f. Que reconozca que los animales de servicio ayudan a las personas con discapacidades de muchas formas diferentes, como: asistir a personas con las condiciones de la Parte Demandante o guiar a personas ciegas o con problemas de visión y recuperar objetos caídos para ellos; alertar a las personas sordas o con dificultades auditivas sobre los sonidos y la presencia de otras personas; llevar y recoger artículos, abrir puertas o accionar interruptores para personas con discapacidades que tienen uso limitado de manos o brazos, uso limitado de sus piernas o capacidad limitada para doblarse o agacharse; empujar o halar de sillas de ruedas; alertar a las personas con discapacidad sobre la aparición de afecciones médicas como convulsiones, protegerlas y amortiguarlas en caso de caída y revivirlas; trabajar o realizar tareas para personas con lesión cerebral traumática, discapacidad intelectual o discapacidad psiquiátrica, como recordarle a una persona con depresión que tome medicamentos o despertarla, ayudar a las personas con lesión cerebral traumática a localizar artículos perdidos o seguir las rutinas diarias; brindar apoyo físico y ayudar a personas con discapacidad física con estabilidad y equilibrio.

g. Que reconozca que la mayoría de las veces, las personas con discapacidades que utilizan animales de servicio pueden identificarse fácilmente sin necesidad de interrogarlas.

h. Que se reconozca que si se puede identificar la discapacidad que utiliza animal de servicio, no debe hacer que la persona se sienta incómoda haciendo preguntas.

i. Que se implemente una política de, cuando sea necesario, un empleado entrenado de la agencia solamente podrá hacer las siguientes dos preguntas:

    i. ¿Se requiere el animal debido a una discapacidad?

    ii. ¿Qué tareas o servicios ha sido entrenado para realizar el animal?

j. Una política que no permita que se hagan preguntas sobre la discapacidad a una persona con un animal de servicio;

k. Una política de no pedir a una persona con animal de servicio que muestre una certificación o una tarjeta de identificación especial como prueba del entrenamiento de su animal;

l. Una política de no pedir a una persona con un animal de servicio que use una entrada o salida específica en la agencia de manera desigual;

m. Una política a los fines de que una vez se hacen las dos preguntas arriba indicadas, ningún otro empleado puede hacer más preguntas sobre el animal de servicio;

n. Una política de permitir que los animales de servicio acompañen a los visitantes con discapacidades a todas las áreas de la agencia que normalmente utilizan las personas;

o. Una política a los fines de que en el caso de que el comportamiento de un animal de servicio en particular represente una amenaza directa para la salud o la seguridad de otros, la agencia tendrá el derecho de excluir

al animal de sus instalaciones en ese momento, pero nunca podrá rechazar el servicio a una persona con una discapacidad cuando no este acompañado por ese animal de servicio en particular.

p. Una política que reconozca que no existe una amenaza directa si el dueño del animal de servicio toma medidas rápidas y efectivas para controlar al animal;

q. Una política que reconozca que no se excluirá a un animal de servicio en particular basándose en experiencias pasadas con otros animales o por miedo que no esté relacionado con el comportamiento real de un animal de servicio.

r. Una política para que cada situación se considerare individualmente.

s. Una política para que se reciban, atiendan y tome acciones correctivas de acuerdo con las consultas o quejas de los visitantes a un número de teléfono o correo electrónico particular.

D. Se que las políticas y prácticas sean modificadas para beneficio de todos los restaurantes McDonald's en Puerto Rico. Se solicita además respetuosamente la designación de un monitor para que vele por el cumplimiento estricto de los remedios que conceda el tribunal o que el tribunal supervise directamente la adopción, implementación y seguimiento de unas políticas, prácticas y procedimientos que sean consistentes con la ADA.

E. Que se declare que cualquier reglamento o ley estatal que sea inconsistente con la reglamentación de la ADA se tenga por no puesta, por ser campo ocupado, salvo cuando se trate de leyes o reglamentos estatales que otorguen más derechos que la legislación federal.

F. En caso de que la Parte Demandada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la Propiedad como medida para detener la

condición discriminatoria hasta tanto la Parte Peticionada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

G. Pago de honorarios de abogado, costos de la acción y gastos de litigio, de conformidad con 42 USC § 12205 y la Sección 505 de la Rehabilitation Act, 28 CFR § 36,505 y su jurisprudencia vinculante interpretativa y;

H. Daños compensatorios por una cantidad a determinarse en juicio, de acuerdo con la prueba, al amparo de la Rehabilitation Act. Se solicita que se imponga un monto no menor de cien mil dólares $100,000.

I. Daños nominales ascendentes a un dólar por dos fundamentos completos e independientes: (1) violación al Rehabilitation Act; (2) violación de la Americans with Disabilities Act. Los daños nominales no están disponibles para las causas de acción estatales, pero sí para las causas de acción federales (federal question) y se solicita la imposición de daños nominales expresamente al amparo de lo resuelto en Uzuegbunam v. Preczewski, 592 U.S. ___ (2021).

J. La provisión de cualquier otro remedio que sea justo, propio, en ley o equidad, que no haya sido expresamente solicitado pero que proceda como cuestión de derecho.

**SOMETIDO RESPETUOSAMENTE.**

Hoy 13 de abril de 2021.

f/José Carlos Vélez Colón
LIC. JOSÉ CARLOS VÉLEZ COLÓN
VELEZ LAW GROUP LLC
R.U.A. NÚM.: 18913
JVELEZ@VELEZLAWGROUP.COM
421 AVE MUÑOZ RIVERA #205
SAN JUAN, PR 00918
TEL.: (787) 599-9003
FAX: N/A

Zuleika Castro De Jesús
LIC. ZULEIKA CASTRO DE JESÚS

VELEZ LAW GROUP LLC
R.U.A. NÚM.: 21258
FL Bar No.: 1022294
1969 S. Alafaya Trail #379
Orlando, FL 32828-8732
zcastro@djesuslaw.com
T.: (407) 267-7130
Fax: N/A





# Registry of Corporations and Entities

Corporations and Entities
Search (/CorporationSearch.aspx)
Create / Authorize (/CreationFilings/NameAvailability.aspx)
Amend (/CorporationSearch.aspx?m=ca)
Dissolve / Withdraw (/CorporationSearch.aspx?m=dis)
Convert (/CorporationSearch.aspx?m=cnv)
Merge / Consolidate (/Mergers/Selection.aspx)
Restore (/CorporationSearch.aspx?m=rst)
Reserve Name (/NameReservation/Prep.aspx)
Create Account (/Admin/Register.aspx)

Annual Filings
2020 Annual Report (/AnnualReportStart.aspx)
2020 Annual Report Extension (/AnnualReportStart.aspx?m=pp)
2020 LLC Fees (/AnnualReportStart.aspx?m=ad)
LLP Renewal (/CorporationSearch.aspx?m=lr)
Prior Years (/CorporationSearch.aspx?m=pyf)

Certificates
Order Good Standing (/CorporationSearch.aspx?m=oc)
Order Existence (/CorporationSearch.aspx?m=oce)
Validate (/Validate/Default.aspx)

## CORPORATION INFORMATION

(/Help/Help_en.htm#CORPINFO)

## ARCOS DORADOS PUERTO RICO, LLC

Return to Search Results

I want to: Select | Next

Details | Articles | Annual Filings | Certificates

### General Information

| | | | |
|---|---|---|---|
| **Name** | ARCOS DORADOS PUERTO RICO, LLC | | |
| **Register No.** | 4150 | **Status** | ACTIVE |
| **Formation Date** | 15-Feb-1995 11:52 AM | **Effective Date** | 15-Feb-1995 11:52 AM |
| **Expiration Date** | Does not expire | | |
| **Class** | Limited Liability Company | | |
| **Type** | For Profit | **Jurisdiction** | Domestic |

### Designated Office Address

| | | | |
|---|---|---|---|
| **Street Address** | MONTEHIEDRA OFFICE CENTER, 9615 LOS ROMEROS AVE., STE. 504<br>SAN JUAN, PR 00926-7031 | **Mailing Address** | MONTEHIEDRA OFFICE CENTER, 9615 LOS ROMEROS AVE., STE. 504<br>SAN JUAN, PR 00926-7031 |

### Resident Agent

| | | | |
|---|---|---|---|
| **Name** | ARCOS DORADOS PUERTO RICO LLC | | |
| **Street Address** | MONTEHIEDRA OFFICE CENTER, 9615 LOS ROMEROS AVE., STE. 504<br>SAN JUAN, PR 00926-7031 | **Mailing Address** | MONTEHIEDRA OFFICE CENTER, 9615 LOS ROMEROS AVE., STE. 504<br>SAN JUAN, PR 00926-7031 |

### Administrators

| Name / Title(s) | Street Address | Mailing Address |
|---|---|---|
| ARCOS DORADOS CARIBBEAN DEVELOPMENT CORPORATION | 251 LITTLE FALLS DRIVE, WILMINGTON, DE, 19808 | 251 LITTLE FALLS DRIVE, WILMINGTON, DE, 19808 |

### Authorized Persons

| Name | Street Address | Mailing Address |
|---|---|---|
| Woods White Staton Welten | 300 Ave. Felisa Rincón, Suite 10 San Juan, P.R. | 300 Ave. Felisa Rincón, Suite 10 San Juan, P.R. 00926-5970 |
| Annette Franqui | 300 Ave. Felisa Rincón, Suite 10 San Juan, P.R. | 300 Ave. Felisa Rincón, Suite 10 San Juan, P.R. 00926-5970 |
| Carlos Hernández Artigas | 300 Ave. Felisa Rincón, Suite 10 San Juan, P.R. | 300 Ave. Felisa Rincón, Suite 10 San Juan, P.R. 00926-5970 |

### Purpose

To engage in any Lawful busine

Return to Search Results