**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Maria Laboy-Febo,<br><br>      Plaintiff,<br><br>      v.<br><br>Arcos Dorados Puerto Rico, LLC,<br><br>      Defendant. | Civ.   No.   21-1245<br>(GMM) |

**OPINION AND ORDER**

Before the Court is Defendant Arcos Dorados Puerto Rico, LLC's ("Defendant" or "McDonald's") *Renewed Motion for Summary Judgment and Memorandum in Support Thereof* ("Motion for Summary Judgment"). (Docket No. 82). Defendant requests that the Court dismiss the action as moot.[1] In turn, Plaintiff María Laboy-Febo ("Plaintiff" or "Laboy") filed a *Response in Opposition to Motion for Summary Judgment* ("Opposition"). (Docket No. 90). There, Plaintiff opposed

---

[1] The Court notes that the "proper vehicle for challenging a court's subject matter jurisdiction [(grounded on mootness)] is Federal Rule of Civil Procedure 12(b)(1)." <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358, 362 (1st Cir. 2001); *see also* <u>Gonzalez v. U.S.</u>, 284 F.3d 281, 287 (1st Cir. 2002). However, as discussed below, the Court questions Laboy's contention that she made a *prima facie* case under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. Although Defendant did not expressly brief the issue, it hinted at such when it stated: "It is a simple observation, Plaintiff came back to Defendant's facilities a second time around with her American Bulldog Mix dog, was served and stayed at the facilities because, in reality, McDonald's employees welcomed her like any other customer. . .The reality of it all is that Defendant here treated the Plaintiff [Laboy] like any other costumer and welcomed her back with her American Bulldog Mix dog and was served in the facilities after her initial visit. . .*Ergo*, Defendant never by any means acted in a discriminatory behavior or have discriminatory policies against persons with disabilities."(Docket No. 82 at 16).)

Defendant's Motion for Summary Judgment based on the voluntary cessation exception, which dictates that a party should not be able to defeat a judgment by temporarily altering questionable behavior. According to Plaintiff, Defendant's institution of a policy to allow service dogs in their restaurants in compliance with the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, ("ADA"), is insufficient to moot her complaint since "it is not absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000); *see also* Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007). For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

On April 13, 2021, Plaintiff filed an action against McDonald's for discrimination ("Complaint"). (Docket No. 9-1). The Complaint seeks injunctive relief pursuant to Title III of the ADA, and compensatory damages pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"). Plaintiff further seeks nominal damages under Uzuegbunam v. Prescewski, 592 U.S. 279 (2021).

According to Laboy, she is a person protected by the ADA since she suffers from a severe anxiety disorder and a panic disorder.

(Docket No. 9-1 at 6, ¶ 8). Laboy further alleges that she utilizes a service animal that is trained to carry out tasks directly related to her conditions. Specifically, Laboy posits that her service animal provides her with emotional support; can detect the onset of her panic attacks; and can help decrease the duration of her panic events. (Id. ¶ 9).

Laboy alleges that on January 27, 2021, she went to the commercial center Carolina Shopping Court, located in Carolina, Puerto Rico. (Id. ¶ 10). She then decided to enter the McDonald's restaurant located in the Carolina Shopping Court. (Id.). Once inside the McDonald's restaurant, Laboy states that she requested to speak directly with the restaurant's manager. (Id. ¶ 12). Laboy inquired about ADA regulations regarding service animals. According to Laboy, the restaurant's manager was unaware of the applicable regulations, but stated that only guide dogs for people with blindness were allowed inside the establishment. (Id.). Laboy purports that she explained that she had a service animal, an American Bulldog mix weighing approximately 70 pounds, that was not with her that day. (Docket No. 9-1 at 9 ¶ 14).

The following week, Laboy states that she returned to the McDonald's restaurant in the Carolina Shopping Court with her American Bulldog mix, despite her knowledge that McDonald's supposed policy only allowed guide dogs for people with blindness.

Civil No. 21-1245(GMM)
Page -4-

(Id. ¶ 15). Laboy posits that when she entered the restaurant she was informed that only guide dogs for the blind were allowed. (Id.). According to Laboy, she explained what constitutes a service animal to the restaurant employees, but, doing so made her uncomfortable. (Id.). Laboy admits that the McDonald's employees ultimately allowed her and her American Bulldog to enter and eat at the restaurant. (Id.).

Laboy argues that the event interfered with her right to the free and equal access and enjoyment of the restaurant. (Id.). Simply put, Plaintiff alleges that her experience at the restaurant constituted discrimination and left her feeling humiliated. (Docket No. 9-1 at 9 ¶ 15).

Laboy requested injunctive relief requiring that, after the lawsuit was filed, Defendant adopt, implement, and monitor a policy regarding service animals that:

1.    recognizes that service animals are individually trained to work or carry-out tasks for people with disabilities.

2.    recognizes that service animals are not always dogs; other animals can support people with disabilities.

3.    recognizes that service animals come in all breeds and sizes, they can be trained by an organization or by a person with a disability, and they do not need to be certified or authorized by any state or private authority.

Civil No. 21-1245(GMM)
Page -5-

4.    recognizes that service animals do not always
      have a vest, a sign, or a symbol indicating that
      they are service animals.

5.    recognizes that a service animal is not a pet.

6.    recognizes that service animals support people
      with disabilities in many different ways, such
      as: assist people with the Plaintiff's conditions
      or guide people who are blind or have eyesight
      problems and recover objects they may have
      dropped for them; alert people who are deaf or
      have hearing impairments regarding sounds and the
      presence of other people; take and collect
      articles, open doors or click on switches for
      people with disabilities who have limited use of
      their hands or arms, limited use of their legs or
      limited capacity to bend or squat; push or pull
      wheelchairs; alert people with disabilities
      regarding the appearance of medical ailments such
      as convulsions, protect them and cushion in the
      case of falls and revive them; work or carry out
      tasks for people with disabilities with traumatic
      cerebral lesions, intellectual or psychiatric
      disabilities, such as reminding a person with
      depression to take their medication or wake them
      up, help people with traumatic cerebral lesions
      to locate lost articles or follow daily routines;
      provide physical support and help people with
      physical disabilities with their stability and
      equilibrium.

7.    recognizes that the majority of times, people
      with disabilities who use service animals can be
      easily identified without need to interrogate
      them.

8.    recognizes that if the disability that uses the
      service animal can be identified, the person
      should not be made uncomfortable through the
      asking of interrogative questions.

9.    implements a policy that, when necessary, a
      trained employee of the agency will be allowed to
      ask only the following two questions:

Civil No. 21-1245(GMM)
Page -6-

> i. Is the animal required due to a disability?
> ii. Which tasks or services has the animal been trained to carry out?

10. A policy that does not allow asking questions regarding the disability of a person with a service animal.

11. A policy of not requesting that a person with a service animal shows a certification or a special identification as evidence of their animal's training.

12. A policy of not requesting that a person with a service animal use a specific entrance or exit in the agency in an unequal manner.

13. A policy that once the two questions indicated above are asked, no other employee may ask any further questions regarding the service animal.

14. A policy of allowing service animals to accompany visitors with disabilities to all the areas in the agency that are normally utilized by people.

15. A policy that an agency will have the right to exclude the animal from its facilities if the behavior of a particular service animal represents a direct threat to the health or security of others, but an agency may never reject service to a person with a disability when he or she is not accompanied by that particular service animal.

16. A policy that recognizes that no direct threat from a service animal exists if its owner takes fast and effective measures to control the animal.

17. A policy that recognizes that a particular service animal will not be excluded based on past experiences with other animals or due to a fear that it is not related to the real behavior of a service animal.

Civil No. 21-1245(GMM)
Page -7-

18.    A policy so that each situation is assessed
       individually.

19.    A policy to receive, address, and take corrective
       actions in accordance to consults or complaints
       by visitors to a specific phone number or email.

(Docket No. 9-1 at 17-20). Laboy offered no argument or explanation
as to the reasonableness and or necessity of the requested
modifications. *See* 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. §
36.302(a). Further, the record is devoid of any indication that
the requests listed above were made prior to the initiation of
this lawsuit.

## II. SUMMARY JUDGMENT STANDARD

A.    Fed. R. Civ. P. 56

Fed. R. Civ. P. 56 governs motions for summary judgment. "The
court shall grant summary judgment if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
There is a genuine dispute in a material fact "if the evidence 'is
such that a reasonable jury could resolve the point in favor of
the non-moving party.'" Taite v. Bridgewater State University,
Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* Ellis
v. Fidelity Management Trust Company, 883 F.3d 1, 7 (1st Cir.
2018)). In turn, a fact is material "if it 'has the potential of
affecting the outcome of the case.'" Id. (*quoting* Pérez-Cordero v.

Civil No. 21-1245(GMM)
Page -8-

Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).  In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The movant has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258 F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory

Civil No. 21-1245(GMM)
Page -9-

allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must also refrain from assessing the credibility or weight of the evidence. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). The Court may ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Local Civ. R. 56(e); Rodríguez-Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022).

The Court further notes that a "properly support[ed] motion can be survived only if the non-moving party shows that a trial worthy issue exists." Sanchez v. ACAA, 247 F.Supp.2d 61, 66 (D.P.R. 2003). Particularly, "[t]he party opposing the motion cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary

judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B.   Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment. See Local Civ. R. 56. In sum, it requires the non-movant to "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If a fact is not admitted, "the opposing statement shall support each denial or qualification by a record citation. . ." Id. In its opposing statement, the non-movant can include additional facts supported by record citations. See id. In turn, the movant "shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Local Civ. R. 56(d). In its statement, the movant shall admit, deny, or qualify those additional facts. See id. Any denial or qualification that the movant raises must be supported by record citation. See id.

Failure to comply with Local Rule 56(c) allows the Court to accept a party's proposed facts as stated. See López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); see also Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local

Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their own peril. *See* López-Hernández, 64 F.4th at 26.

### III.  FINDINGS OF FACT

The Court examined Defendant's *Statement of Uncontested Material Facts* (Docket No. 61-1)*,* Plaintiff's *Response to Statement of Uncontested Material Facts, and Plaintiff's Additional Statement of Uncontested Facts* (Docket No. 90-1). Notably, Defendant failed to contest *Plaintiff's Additional Statement of Uncontested Facts* at Docket No. 90-1 at 13-15. Regardless, the Court only credits material facts properly supported by a record citation. Further, the Court reads the Complaint in the light most favorable to the Plaintiff and resolves any ambiguities in her favor. *See* Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011). The Court thus makes the following findings of fact.

1.  Laboy resides in Carolina, Puerto Rico. (Docket Nos. 90-1 at 14 ¶ 9; 90-3 at 1 ¶ 1).

2.  Laboy owns a registered service dog that assists her when she experiences high levels of anxiety. (Docket Nos. 90-1 at 14 ¶ 9; 90-3 at 1 ¶ 1, 2 ¶ 6)

3.  On January 27, 2021, Laboy visited the McDonald's restaurant located at the Carolina Shopping Court at 65th Infantry Avenue, Carolina, Puerto Rico. (Docket Nos. 90-1 at 2 ¶ 1, 14 ¶ 10; 90-3 at 1 ¶ 2).

4.   On January 27, 2021, Laboy requested to speak with
     a manager at the McDonald's restaurant regarding a
     sign indicating that the restaurant allows only
     "guide dogs." (Docket Nos. 9-1 at 6 ¶ 10; 61-1 at
     1 ¶ 2; 90-1 at 3 ¶ 2).

5.   During her January 27, 2021 visit to the Carolina
     McDonald's, Plaintiff explained to the restaurant's
     employees that she had a service animal, which was
     not with her that day, that was an "American Bulldog
     Mix," weighing about seventy (70) pounds. (Docket
     Nos. 61-1 at 2 ¶ 5; 90-1 at 4 ¶ 5).

6.   During her visit to the McDonald's restaurant,
     Laboy was informed by the Manager that animals were
     not allowed inside the restaurant; that only guide
     dogs for the visually impaired were permitted in
     the restaurant; and that they had not received
     training regarding "Service Animals". (Docket Nos.
     Docket Nos. 61-1 at 2 ¶ 7; 90-1 at 4 ¶ 7; 14 ¶ 11;
     90-3 at 1 ¶ 3).

7.   Laboy explained to the Manager and the staff about
     the variety and nature of service animals,
     underscoring that they extend beyond just guide
     dogs for the blind. (Docket No. 90-3 at 1 ¶ 4).

8.   Laboy was then allowed entrance to the McDonald's
     with her service animal. (Docket Nos. 90-1 at 15 ¶
     13; 90-3 at 1-2 ¶ 5).

9.   Mrs. Lorelli Marcano-Reyes ("Marcano") is an Arcos
     Dorados Puerto Rico, LLC representative who offers
     counseling and legal services to Defendant's parent
     company, Golden Arches Development. (Docket Nos.
     61-3 at 7; 90-1 at 5 ¶ 15).

10.  At her deposition, Marcano described Defendant's
     training regarding company policy on providing
     service to individuals with service animals.
     (Docket No. 61-3 at 15-16).

11.  According to Marcano, "NABIT" is Arcos Dorados
     Puerto Rico, LLC's Training Department and Human

       Resources's employee training system on applicable industry rules and regulations, including those regarding industry standards under the ADA. (Docket No. 61-3 at 15).

12. All Arcos Dorados Puerto Rico, LLC employees who receive training sign a notice of receipt to confirm that they completed the training. (Docket No. 61-3 at 20).

13. Defendant's relevant service animal policy includes instruction on the description of a service animal, examples of service animals, and examples of services or commands that a service animal can be trained to perform. (Docket No. 73-1 at 1-4).

14. Per Defendant's service animal policy, when a customer enters an Arcos Dorados Puerto Rico, LLC facility with an animal, employees may only ask two questions: (1) is the service animal needed for a disability?; and (2) what tasks or commands is the service animal trained to perform? (Docket Nos. 73-1 at 5; 90-1 at 11 ¶ 24).

15. Defendant's service animal policy provides that employees are prohibited from requesting any documentation as proof that the service animal is certified, trained, or licensed as a service animal. (Docket No. 73-1 at 5).

## IV. APPLICABLE LAW

A. Title III of the ADA and the Rehabilitation Act

1. Discrimination under the ADA and the Rehabilitation Act

Generally, Title III of the ADA prohibits discrimination in a place of public accommodation operated by a private entity based on disability. *See* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities. . ." 42 U.S.C. § 12102(1)(A). To determine whether a plaintiff has been discriminated against based on a disability, "a proper construction of the term 'discrimination'" is necessary. PGA Tour, Inc. v. Martin, 532 U.S. 661, 682 (2001). For the purposes of section 12182(a), 42 U.S.C. § 12182(b)(2)(A)(ii) defines "discrimination" to include: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." Further, Department of Justice regulations state that:

> A public accommodation shall make reasonable
> modifications in policies, practices, or procedures,
> when the modifications are necessary to afford goods,
> services, facilities, privileges, advantages, or
> accommodations to individuals with disabilities, unless
> the public accommodation can demonstrate that making the
> modifications would fundamentally alter the nature of

the goods, services, facilities, privileges, advantages, or accommodations.

28 C.F.R. § 36.302(a).[2] As it pertains to service animals, the regulations dictate that "public accommodations shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

A *prima facie* case for discrimination under section 12182(b)(2)(A)(ii) of Title III of the ADA requires a plaintiff to prove:

> (1) that he [or she] has a disability as defined under the ADA; (2) that the defendant's office is a private entity that owns, leases, or operates a place of public accommodation; (3) that he [or she] requested a reasonable modification of defendant's policies or procedures to allow him access to the public accommodation; and (4) that the defendant failed to make reasonable modifications that would accommodate his [or her] disability without fundamentally altering the nature of the public accommodation.

Sanchez, 247 F.Supp.2d at 67 (*citing* 42 U.S.C. § 12182(a), (b)(2)(A)(ii)); *see also* Santiago Ortiz v. Caparra Center Associates, LLC, 261 F.Supp.3d 240, 245 (D.P.R. 2016).

---

[2] The Department of Justice should be given deference since it is the "agency directed by Congress to issue implementing regulations, to render technical assistance, and to enforce Title III in court. . ." Bragdon v. Abbott, 524 U.S. 624, 646 (1998) (internal citations omitted).

The Court underscores that the element of <u>requesting accommodations</u> to an allegedly discriminatory policy, practice, or procedure is crucial, if not an outright prerequisite. *See* <u>Dudley v. Hannaford Bros. Co.</u>, 333 F.3d 299, 307 (1st Cir. 2003) ("The operative provision, 42 U.S.C. § 12182(b)(2)(A)(ii), requires a person with a disability to request a reasonable and necessary modification, thereby informing the operator of a public accommodation about the disability."); *see also* <u>Baughman v. Walt Disney World Co.</u>, 685 F.3d 1131 (9th Cir. 2012) (holding that defendant's failure to make a modification or waive its policy – in the face of the plaintiff's request – amounted to discrimination); <u>Martin</u>, 532 U.S. at 691 ("Congress intended that an entity like the PGA. . .give individualized attention to the handful of <u>requests</u> that it might receive from talented but disabled athletes for a modification or a waiver of a rule to allow them access to the competition. . .") (emphasis added); <u>Shaywitz v. American Bd. Of Psychiatry and Neurology</u>, 848 F.Supp.2d 460, 466 (S.D.N.Y. 2012) ("Reason dictates that in order for a defendant to be liable for discrimination 'on the basis of disability,' 42 U.S.C. § 12182(a), the defendant must have had adequate knowledge of the plaintiff's disability."). After all, a "[defendant] can be expected to respond only to what it knows (or is chargeable with knowing)." <u>Wynne v. Tufts University School of Medicine</u>, 976 F.2d

791, 795 (1st Cir. 1992). Moreover, this district has found that to make a *prima facie* showing of ADA discrimination, a plaintiff must request a reasonable modification before filing his or her complaint. *See* CADFI Corp. v. Puerto Rico Tel. Co., No. CV 22-1246 (BJM), 2024 WL 866269, at *5 (D.P.R. Feb. 29, 2024); Betancourt Colon v. Puerto Rico Convention Ctr. Dist. Auth., No. CV 22-01288 (MAJ), 2023 WL 5163320, at *4 (D.P.R. Aug. 11, 2023).

Analogously, Section 504 of the Rehabilitation Act commands that "[n]o otherwise qualified individual with a disability in the United States. . .shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . ." 29 U.S.C. § 794(a). The Rehabilitation Act applies to cases in which disabled individuals suffer from discrimination in the hands of a federally funded program and or activity.

Notably, claims brought under Title III of the ADA and can also be brought under the Rehabilitation Act.[3] Indeed, in most cases, courts routinely consider the merits of such claims together. *See, e.g.,* Mershon v. St. Louis University, 442 F.3d 1069, 1076, n.4 (8th Cir. 2006) (noting that cases interpreting

---

[3] This is the case with Plaintiff's claims. Plainly, the same set of operative facts give rise to her Cause of Action under the Rehabilitation Act and her Cause of Action under the ADA. (Docket No. 9-1 at 14-17).

either the ADA or the Rehabilitation Act are generally interchangeable); Powell v. Nat'l Bd. Of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004); Menkowitz v. Pottstown Memorial Medical Center, 154 F.3d 113, 120 (3d Cir. 1998) ("Finally, the legislative history to the ADA demonstrates that in enacting Title III, Congress intended to extend the scope of protection afforded to those individuals under the Rehabilitation Act. The House Report, for example, states that 'Section 504 of the Rehabilitation Act of 1973 prohibits Federal agencies and recipients of Federal financial assistance from discriminating against persons with disabilities. The purpose of [T]itle III. . .is to extend these general prohibitions against discrimination to privately operated public accommodations and to bring individuals with disabilities into the economic and social mainstream of American life.'") (quoting H.R.Rep. No. 101-485, pt. 2, at 99 (1990)).

   2.   Remedies available to the disabled under the ADA and the Rehabilitation Act

      a.   ADA

Section 12188(a)(1) of the ADA incorporates the remedies set forth in the Civil Rights Act of 1964 ("CRA"), 42 U.S.C. § 2000a-3(a). See Dudley, 333 F.3d at 304. "That compendium of remedies allows only injunctive relief (as opposed to money damages)." Id. (citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)) (emphasis added); see also Goodwin v. C.N.J., Inc., 436

F.3d 44, 50 (1st Cir. 2006) ("money damages are not an option for private parties suing under Title III of the ADA."). As such, "a private party may obtain only forward-looking relief; <u>damages for past harms are not available</u>." <u>Goodwin</u>, 436 F.3d at 50 (*citing* <u>Newman</u>, 390 U.S. at 402) (emphasis added); *see also* <u>G. v. Fay School</u>, 931 F.3d 1, 9 (1st Cir. 2019) (holding that the only relief available under Title III of the ADA is preventive injunctive relief).

b.   Rehabilitation Act

The Rehabilitation Act, like the ADA, incorporates certain remedies of the CRA. *See* 29 U.S.C. § 794a(a)(2); *see also* <u>Schultz v. Young Men's Christian Ass'n of U.S.</u>, 139 F.3d 286, 290 (1st Cir. 1998). Now, although the CRA does not expressly provide for damages, "by judicial construction a private cause of action for injunctive relief and damages now exists under section 504 [of the Rehabilitation Act], qualified by the general assertion that the remedy must be 'appropriate.'" <u>Schultz</u>, 139 F.3d at 290 (*citing* <u>Franklin v. Gwinnett County Public Schools</u>, 503 U.S. 60 (1992)). The First Circuit, however, decreed that compensatory damages for violations of the Rehabilitation Act are "not available when there [is] no evidence of economic harm or animus toward the disabled. . ." <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 126 (1st Cir. 2003); (*citing* <u>Schultz</u>, 139 F.3d at 290-91).

## V. ANALYSIS

A.   Laboy failed to make a *prima facie* case for ADA discrimination[4]

As stated, there are four (4) basic requirements Laboy had to meet to make a *prima facie* case for discrimination under section 12182(b)(2)(A)(ii) of Title III of the ADA, to wit, that: (1) she has a disability as defined under the ADA; (2) that McDonald's is a private entity that owns, leases, or operates a place of public accommodation; (3) that she requested a reasonable modification of McDonald's policies or procedures to allow her access to the public accommodation; and (4) that McDonald's failed to make reasonable modifications that would accommodate her disability. Sanchez, 247 F.Supp.2d at 67 (*citing* 42 U.S.C. § 12182(a), (b)(2)(A)(ii)); *see also* Dudley, 333 F.3d at 307; Caparra Center Associates, LLC, 261 F.Supp.3d at 245. Here, Laboy failed to show that McDonald's did not make reasonable modifications to its policy to accommodate Laboy and her disability.

1. Laboy is a disabled person under the ADA and her American Bulldog mix is a "service animal"

McDonald's does not challenge that Laboy has a protected disability under the ADA. McDonald's, however, disputes the

---

[4] Again, although McDonald's did not explicitly brief the Court on whether Laboy made a *prima facie* case for discrimination under the ADA, Plaintiff claims that she did. (Docket No. 90 at 4, 6). For the reasons that follow, the Court disagrees.

proposition that Laboy's American Bulldog mix is a service animal.
In McDonald's view, Laboy's dog is an emotional support animal not
covered by the ADA. The Court disagrees.

A "service animal" encompasses dogs that are "individually
trained to do work or perform tasks for the benefit of an
individual with a disability, including a physical, sensory,
psychiatric, intellectual, or other mental disability." 28 C.F.R.
§ 104. Since the onset of this litigation, Laboy claims that she
is protected by the ADA because "she suffers from and/or has a
medical record regarding the following conditions: severe anxiety
disorder; panic disorder. Said conditions affect her neurological
system, her brain and her day-to-day activities of thinking and
standing upright during dizzy spells associated to panic
episodes." (Docket No. 9-1 at 6 ¶ 8).

Laboy's American Bulldog mix is "trained to carry out tasks
directly related to [her mental conditions]. The service animal,
[] can detect the Plaintiff's panic attacks, gets close to and
distracts her to help her out of the panic attack[s] quicker. Which
provides her with indispensable emotional support and is a
therapeutic service animal." (Id. ¶ 9; Docket No. 90-3 at 2 ¶ 6).
At this juncture, the Court infers that Laboy has a mental
disability, and that her American Bulldog mix is trained to
prevent, detect, and mitigate the adverse impacts of her panic

attacks.[5]  Accordingly, Laboy's American Bulldog mix does more than simply provide her emotional support or comfort. There is nothing on the record that would lead the Court to conclude otherwise.

2. <u>McDonald's is a private entity that owns a place of public accommodation</u>

The McDonald's restaurant located at the Carolina Shopping Court at 65th Infantry Avenue, Carolina, Puerto Rico is a place of public accommodation as defined in 42 U.S.C. § 12181(7)(B). McDonald's did not contest this. Thus, the second element of Plaintiff's section 12182(b)(2)(A)(ii) ADA claim is met.

3. <u>Laboy requested a reasonable modification of McDonald's policy that did not allow restaurant access to her service animal</u>

During her January 27, 2021 visit to the relevant McDonald's, a restaurant employee informed Laboy of the relevant policy regarding animals: guide dogs for the visually impaired were the only animals permitted inside the restaurant. *See, supra,* Section III, Fact No. 6. Laboy explained restaurant staff about the diverse roles and nature of service animals. *See* <u>id.</u> Fact No. 7. Although Laboy never plainly states it, the Court will reasonably infer that Laboy's requested modification of McDonald's "no-animal policy" was to be allowed entrance to the restaurant with her

---

[5] The Court notes that, other than Laboy's allegations and statements, the record is devoid of any evidence of her disability.

American Bulldog mix. Therefore, the record sustains a finding that Laboy has successfully established the third element of a *prima facie* case under section 12182(b)(2)(A)(ii) of the ADA.

### 4. McDonald's made a reasonable modification to its "no-animal policy" to accommodate Laboy's disability

Laboy admits that McDonald's staff allowed her to enter the establishment with her service animal and eat her meal. *See* id. Fact No. 8. The Court need not conduct any further inquiry. When McDonald's staff allowed Plaintiff entry and service, it modified or waived its "no-animal policy." In doing so, McDonald's fulfilled its requirements under the law. *See* Pollack v. Regional School Unit 75, No. 2:13-CV-109-NT, 2017 WL 1592264, at *6 (D. Me. Apr. 28, 2017), *aff'd*, 886 F.3d 75 (1st Cir. 2018) (Title II) (*quoting* A.M. ex rel. J.M. v. NYC Dep't of Educ., 840 F.Supp.2d 660, 680 (E.D.N.Y. 2012), *aff'd*, 513 Fed.Appx. 95 (2d Cir. 2013))("It naturally follows that when an individual already has 'meaningful access' to a benefit to which he or she is entitled, no additional accommodation, 'reasonable' or not, need be provided by the grantee."); *see also* Martin, 532 U.S. at 682 (explaining in dicta in a Title III case that sometimes "an accommodation might be reasonable but not necessary."). Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 385 (2d Cir. 1996) (affirming dismissal of ADA claim because "the accommodations offered by the [defendant] were

Civil No. 21-1245(GMM)
Page -24-

plainly reasonable.") (Title I); Henrietta D. v. Bloomberg, 331 F.3d 261, 282 (2d Cir. 2003) ("There would be no need for injunctive relief if the plaintiffs were already being reasonably accommodated.") (Title II).[6]

As such, Laboy failed to meet an essential element of a *prima facie* case under section 12182(b)(2)(A)(ii) of the ADA. For the same reasons, Plaintiff's claim under the Rehabilitation Act fails and shall be dismissed.[7]

## VI. CONCLUSION

Because Laboy has not made a *prima facie* case for discrimination under section 12182(b)(2)(A)(ii) of Title III of the ADA, nor under Section 504 of the Rehabilitation Act, the Court **GRANTS** Defendant's Motion for Summary Judgment (Docket No. 82).

---

[6] Although the Court's decision rests on the finding that Plaintiff failed to present a triable *prima facie* case under both the ADA and the Rehabilitation Act, the Court also notes that McDonald's has an ADA compliant service animal policy and employee training program. *See, supra,* Section III, Fact Nos. 9-15. Remedies under the ADA are limited to injunctive relief. The Rehabilitation Act only provides compensatory damages in cases where a plaintiff suffered economic harm and or there is evidence of discriminatory animus towards the plaintiff. Neither was shown in the present case. Thus, even if Laboy had successfully established a *prima facie* case, she would not be entitled to any further remedy under the law.

[7] To prevail on a Section 504 discrimination claim under the Rehabilitation Act, a plaintiff must show that he or she: (1) is a qualified individual with a disability; (2) was "otherwise qualified" to participate, and (3) was denied participation "solely by reason of [his or her] ... disability," and (4) sought to participate in a federally-funded program or activity. Lesley v. Hee Man Chie, 250 F.3d 47, 52-53 (1st Cir. 2001); *see also* Rivera-Concepción v. Puerto Rico, 786 F. Supp. 2d 489, 500 (D.P.R. 2011). The fourth part of the test is an additional and specific requirement in the Rehabilitation Act, compared to those needed to establish a *prima facie* case under Tittle III of ADA. *See* Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742 (1st Cir. 1995).

**Civil No. 21-1245(GMM)**
**Page -25-**


Laboy's Complaint is **DISMISSED WITH PREJUDICE.** Judgment shall be

entered accordingly.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, March 31, 2024.


                         s/Gina R. Méndez-Miró
                         GINA R. MÉNDEZ-MIRÓ
                         UNITED STATES DISTRICT JUDGE